```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - -x

UNITED STATES OF AMERICA          :    07 Cr. 1119 (CM)

        - v. -                    :

RICHARD A. GRANT,                 :

        Defendant.                :

- - - - - - - - - - - - - - - - - -x
```

**GOVERNMENT'S SUPPLEMENTAL
POST-HEARING MEMORANDUM OF LAW
IN RESPONSE TO DEFENDANT'S MOTION TO SUPPRESS**

The Government respectfully submits this Supplemental Post-Hearing Memorandum of Law in further response to the defendant Richard A. Grant's motion to suppress and to respond to several issues raised during post-hearing oral argument on the defendant's motion.

**I. The Defendant Voluntarily Gave Consent To Enter His Apartment**

Based on the testimony of the two law enforcement officers who went to the defendant's apartment on August 4, 2007, the defendant consented to their entry into his apartment.  While the defendant did not explicitly tell the officers they could enter his apartment, the defendant's actions and conduct demonstrate his consent.

"[I]t is well settled that consent may be inferred from an individual's words, gestures, or conduct." United States v. Buettner-Janusch, 646 F.2d 759, 764 (2d Cir. 1981) (citation

omitted); accord, United States v. Garcia, 56 F.3d 418, 424 (2d Cir. 1995) ("'consent . . . can be found from an individual's words, acts or conduct'") (citation omitted; ellipses in original). Accordingly, "a search may be lawful even if the person giving consent does not recite the talismatic phrase: 'You have my permission to search.'" Id.; see United States v. Camilo, 287 F. Supp. 2d 446, 451 (S.D.N.Y. 2003) ("valid consent need not be expressed through any particular phrase, and it 'can be found from an individual's words, acts or conduct'") (citation omitted).

Once consent is established, the government must show, by a preponderance of the evidence, that the consent was freely and voluntarily given. See Schneckloth v. Bustamonte, 412 U.S. 218 (1973); United States v. Calvente, 722 F.2d 1019, 1023 (2d Cir. 1983). In determining whether the consent was voluntary, courts examine the totality of the circumstances. See Schneckloth, 412 U.S. at 227.

   A.   The Defendant Consented To Entry

The defendant's gestures and conduct as described by New York City Police Department ("NYPD") Sergeant Edward Murphy and NYPD Officer Brendan Owens demonstrate that the defendant consented to the officers' entry into his apartment. When the officers arrived at the defendant's apartment building, which is

a three story house, individuals were on an outside balcony overlooking the front door. (Transcript of April 30, 2008 Hearing ("Tr.") 13; see Tr. 61.) The officers identified themselves to such individuals as police officers and asked them if "they could open the door for us, to let us in." (Tr. 13; see Tr. 61-62.) The individuals refused to open the door for the officers. (Tr. 13, 62.) Sergeant Murphy then began to knock on the front door to the house and ring a bell. (Tr. 14; see Tr. 61-62.) After Sergeant Murphy continued to knock on the front door and ring the bell, the defendant came to the front door and opened it. (Tr. 14, 61-62.)

Sergeant Murphy testified that when the defendant opened the front door, Sergeant Murphy identified himself and the other officers as police officers and told the defendant that they "would like to come in and talk to him." (Tr. 16.)[1] The defendant then let the officers into the house and led them down the hallway toward his apartment, which was on the first floor. (Tr. 16, 31, 63.) Prior to letting the officers into the house,

---

[1] While Officer Owens recalled that Sergeant Murphy told the defendant that they wanted to talk to him while they were walking down the hallway from the front door of the house toward the door to the defendant's apartment, rather than when the defendant opened the front door to the house, (Tr. 62-64, 82-83), under either recollection, the defendant was informed that the Officers wanted to come in and talk to him before he let them into his apartment.

3

the defendant did not close or even attempt to close the front door nor did he tell the officers that they could not enter.

After letting the officers into the house, the defendant walked first down the hallway, followed by Sergeant Murphy, then Officer Owens, and then NYPD Officer Thomas Stynes.  (Tr. 16, 63, 81-82.)  After a few seconds, the defendant reached the door to his apartment.  Sergeant Murphy could not recall whether the door to the defendant's apartment was open or closed, (Tr. 31), but Officer Owens recalled that the defendant opened the door although he could not recall whether the door was closed or partially ajar when the defendant opened it, (Tr. 63).  At the door to the defendant's apartment, the defendant entered the apartment first and the officers followed the defendant into the apartment.  (Tr. 16, 31, 63.)

Viewing the totality of these circumstances, the Government has satisfied its burden of persuasion that the defendant consented to the officers' entry into his apartment.  The defendant had several opportunities to refuse entry and his repeated failure to do so combined with his conduct demonstrates his consent.

Initially, the defendant had ample opportunity to refuse entry at the front door to his house.  Indeed, it is undisputed that individuals on the balcony of the house engaged in exactly

4

such conduct when they refused to open the front door and that such refusal did not result in the officers' use or threat of force to gain entry. (Tr. 13, 61-62.)

The defendant, however, did not refuse to open the front door and did not close the front door upon seeing the officers and learning that they wanted to come in and talk to him. Rather, the defendant let the officers into the house and then led them down the hallway to his apartment. Such "affirmative acts of cooperation" demonstrate that the defendant consented to the entry. United States v. Rosi, 27 F.3d 409, 413-14 (9th Cir. 1994) (defendant consented to entry where agents suggested that they go inside defendant's apartment and defendant did not answer but followed agents into the apartment) (citing United States v. Impink, 728 F.2d 1228, 1232 (9th Cir. 1984) ("courts will infer consent from the cooperative attitude of a defendant")); United States v. Garcia, 997 F.2d 1273, 1281 (9th Cir. 1993) (consent to enter implied where officers asked to talk to defendant, defendant said ok, and defendant stepped back thereby clearing way for officers to enter); see also Calvente, 722 F.2d at 1023 (2d Cir. 1983) (calm conversation and conversational tenor of discussion lend support to consensual entry).

The Tenth Circuit's opinion in United States v. Shaibu, 920 F.2d 1423 (10th Cir. 1989), on which the defendant relies,

5

(Defendant's May 6, 2008 letter to the Court ("Def. Ltr. Br.") at 5-6), is inapposite. In Shaibu, the defendant stepped out of his apartment and walked down the hallway toward officers who had been let into the building. Id. at 1424. In the hallway, one of the officers asked Shaibu if a certain individual was in his apartment and Shaibu turned and walked back into his apartment at which point the officers followed Shaibu through his open apartment door. Id. In contrast, here, rather than simply follow the defendant through an open door, the officers entered the defendant's apartment after a series of events had occurred, including the defendant's answering the front door to his building, letting the officers into the building, and leading the officers down the hallway to his apartment having been informed by the officers that they wanted to come in and talk to him. See Garcia, 56 F.3d 418, 424 (2d Cir. 1995) (criticizing Shaibu and stating that Second Circuit precedent is to the contrary and permits consent based on acts and conduct). Accordingly, the defendant's actions at the front door and in the hallway demonstrate consent to enter his apartment.

    The defendant had other subsequent opportunities to refuse entry into his apartment, either while in the hallway or outside the door to his apartment, and also failed to do so. Similar to his conduct at the front door of the house, after the defendant

let the officers enter the building, the defendant did not say anything and took no action to demonstrate his desire that the officers not enter his apartment. Rather, the defendant walked first into his apartment and did not close or attempt to close his apartment door nor did he tell the officers that they could not enter.[2]

As the Eleventh Circuit explained in United States v. Ramirez-Chilel, 289 F.3d 744 (11th Cir. 2002), when a defendant does not give explicit verbal consent to enter but "yield[s] the right of way," such conduct demonstrates consent to enter. Id. at 751. The court in Ramirez-Chilel distinguished such facts from situations where a defendant's ability to consent is overwhelmed by a show of official authority such that the

---

[2] The defendant testified to the contrary and claimed that when he opened the door to his apartment to go answer the front door bell, the officers already were in front of his apartment door and told the defendant that they wanted to come in and talk to him. (Tr. 141.) The defendant claimed that Sergeant Murphy then "barged his way in" to the apartment. (Tr. 141.)

Even crediting this version of events, the guns and drugs would not necessarily be suppressed. When a search follows an illegal entry, the consent to the search may nevertheless be valid if "the taint of the initial entry has been dissipated." United States v. Snype, 441 F.3d 119, 132 (2d Cir. 2006). Here, assuming arguendo there was some taint from the officers entry into the defendant's apartment, it was dissipated by the "calm" conversation at the defendant's kitchen table during which Sergeant Murphy informed the defendant that the officers had information that he had a gun and asked for and received consent to search. Id. at 134-35.

defendant's ability to consent is compromised.  Id. (citing United States v. Edmondson, 791 F.2d 1512, 1515 (11th Cir. 1986) where officers surrounded apartment, drew their weapons, knocked on the door yelling "FBI.  Open the door," and defendant opened the door, stepped back, and placed his hands upon his head)).[3]

Here, like in Ramirez-Chilel, the defendant did not simply fail to object but rather consented to the officers entry into his apartment by letting them in the front door of the house, leading them down the hallway to his apartment, and then letting them into his apartment.  Accordingly, the defendant's conduct "yielding the right of way" demonstrates his consent.

B. The Defendant's Consent Was Voluntary

Viewing the totality of the circumstances, the defendant's consent was voluntary.  The officers did not use any force or threat of force nor did they use any "trickery, fraud or misrepresentation" to gain entry into the defendant's apartment.

---

[3] United States v. McCraw, 920 F.2d 224 (4th Cir. 1990) on which the defendant relies, (Def. Ltr. Br. at 5), similarly is distinguishable as the officer in that case admitted during his testimony that after the defendant opened the door halfway, the officers "forced our way in."  Accord United States v. Albrektsen, 151 F.3d 951, 954 (9th Cir. 1998)(officer admitted if defendant had not stepped to the side of the door, officers who had already begun to enter would have knocked defendant down); United States v. Waupekenay, 973 F.2d 1533, 1535-36 (10th Cir. 1992)(officers threatened to arrest defendant if she did not cooperate).

United States v. Griffin, 530 F.2d 739, 743 (7th Cir. 1976); see Garcia, 56 F.3d at 423 ("So long as the police do not coerce consent, search conducted on the basis of consent is not an unreasonable search."). Rather, here, the officers told the defendant that they would like to come in and talk to him and after the defendant let them in, they told the defendant the true reason for their visit. In addition, the officers dealt with the defendant in a "courteous" and "non-coercive manner" without "duress or show of force," and the questioning was brief. United States v. Diaz, No. 96-1785, 2000 U.S. App. LEXIS 6312, at *5-6 (2d Cir. Apr. 5, 2000) (10-15 minutes of noncoercive courteous questioning supported finding that consent was voluntary).

The defendant's consent to enter his apartment thus was given voluntarily.

    II.   The Consent To Search Was Written And Executed In The Defendant's Apartment As Demonstrated By Sergeant Murphy's Reference To Writing Down The Defendant's Pedigree Information

After the defendant gave oral consent to search his apartment, the defendant agreed to sign a written consent to search. Sergeant Murphy testified that he then took out his notepad, "wrote out Mr. Grant's pedigree information," and then wrote the statement of consent. (Tr. 18.) After the defendant read the consent statement, Sergeant Murphy testified that the


defendant signed the consent first and then Sergeant Murphy and Officer Owens signed it as witnesses. (Tr. 18, 66-67.) After giving such testimony, Sergeant Murphy was shown by the Government what had been premarked as Government Exhibit 1. Sergeant Murphy identified Government Exhibit 1 as a copy of "the notepad that I made this – that I wrote Mr. Grant's pedigree information and the permission for us to search." (Tr. 19.) Government Exhibit 1 was then admitted into evidence. (Tr. 19.)

In support of the defendant's claim that Government Exhibit 1 was created by the officers after-the-fact at the precinct, the defendant testified that he was never asked for any identification in his apartment. (Tr. 146-47.)[4]  Accordingly, the defendant claimed at the post-hearing oral argument that Sergeant Murphy must have obtained the defendant's driver's license information as part of the post-arrest booking process. Defense counsel, however, failed to ask any witness, including the defendant, whether at the precinct post-arrest, the defendant brought with him and turned in his driver's license.

Admittedly, the Government should have asked Sergeant Murphy

---

[4]While Officer Owens could not recall on cross-examination if the defendant showed any identification prior to signing the consent to search, (Tr. 91), defense counsel did not ask Sergeant Murphy if the defendant showed him any identification prior to signing the consent to search.

what he meant by pedigree information as well as from where he had obtained the address, date of birth, and driver's license number that appear on Government Exhibit 1.[5]  It is clear from the context of Sergeant Murphy's testimony, however, that Sergeant Murphy's reference to pedigree information refers to the address and date of birth written on Government Exhibit 1.

It is equally clear from the face of Government Exhibit 1 and Sergeant Murphy's testimony, that Sergeant Murphy obtained the address and date of birth listed on Government Exhibit 1 from the defendant's driver's license:  the address listed on Government Exhibit 1 is different from the defendant's current residence and location of the search and such address immediately is proceeded by reference to a date of birth and New York State driver's license number.  See n.5.  Sergeant Murphy's testimony that he "wrote down Mr. Grant's pedigree information," thus

---

[5]    Government Exhibit 1 reads, in relevant part:

>     8/4/07 10:30 PM
>     835 E. 221st 1st Floor
>     Richard A. Grant
>     4233 Gunther Avenue
>     Bronx NY 10470
>     DOB: 11/1/69
>     NYS DL# 582 430 368
>     I have lived at 835 E 221st 1st FL
>     since August 2006.

Gov't Ex. 1.

11

referred to Sergeant Murphy's copying down of the defendant's address and date of birth from the defendant's driver's license, which Sergeant Murphy testified happened in the defendant's apartment after the defendant had given oral consent to search his apartment.

Accordingly, the evidence demonstrates that Government Exhibit 1 was written contemporaneously in the defendant's apartment after the defendant consented to the search his apartment. As the defendant gave his consent to search, the defendant's motion to suppress should be denied.

### III. **Exigent Circumstances Based On Smell Of Marijuana**

At the post-hearing oral argument, the Court asked the following question: Assuming *arguendo* consent to enter the apartment but not to search, would the undisputed smell of marijuana upon entry into the apartment present exigent circumstances that would have allowed a warrantless search of the apartment. At the hearing, the Government stated its belief that the smell of marijuana might present exigent circumstances because the drugs easily could be destroyed but requested an opportunity to review the caselaw and make a submission to the Court.

Having now reviewed the relevant caselaw, the Government submits that under the scenario put forth by the Court and the

12

other facts of this case,[6] the smell of marijuana upon entry into the apartment would not have created exigent circumstances under which a warrantless search could have been conducted.  As the officers here, however, obtained both oral and written consent to search, the search was valid and the evidence seized should not be suppressed.

## CONCLUSION

For the reasons set forth above, in the Government's Post-Hearing Brief, and by the Government at the post-hearing oral argument, defendant Richard A. Grant's motion to suppress should be denied in all respects.

Dated:    New York, New York
          May 12, 2008

                                    Respectfully submitted,

                                    MICHAEL J. GARCIA
                                    United States Attorney
                                    Southern District of New York

                              By:   __/S/_____
                                    CARRIE H. COHEN
                                    Assistant United States Attorney
                                    Telephone: (212) 637-2264

---

[6] Namely, that the drugs and drug related items would not have been destroyed because the defendant was alone in the apartment except for his toddler son and the officers could have arrested the defendant for illegal gun possession after which they could have secured the apartment and obtained a search warrant.

**CERTIFICATE OF SERVICE**

      CARRIE H. COHEN deposes and says that he is employed in the Office of the United States Attorney for the Southern District of New York.

      That on May 12, 2008, she caused to be served a copy of the foregoing Government's Supplemental Post-Hearing Memorandum of Law in Response to Defendant's Motion to Suppress by facsimile on:

> Roland Thau, Esq.
> Federal Defenders of New York
> 52 Duane Street, 10th Floor
> New York, New York 10007

      I declare under penalty of perjury that the foregoing is true and correct. Title 28, United States Code, Section 1746.

      /S/
      CARRIE H. COHEN

Executed on: May 12, 2008
             New York, New York

```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - x
                                 :
UNITED STATES OF AMERICA,        :
                                 :   07 Cr. 1119 (CM)
         - v. -                  :
                                 :
RICHARD A. GRANT,                :
                                 :
              Defendant.         :
                                 :
                                 :
- - - - - - - - - - - - - - - - x
```

**GOVERNMENT'S SUPPLEMENTAL POST-HEARING**
**MEMORANDUM OF LAW**
<u>**IN RESPONSE TO DEFENDANT'S MOTION TO SUPPRESS**</u>

                                             MICHAEL J. GARCIA
                                             United States Attorney for the
                                             Southern District of New York
                                             One St. Andrew's Plaza
                                             New York, New York 10007

Carrie H. Cohen
Assistant United States Attorney
    -Of Counsel-

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . . .   ii

PRELIMINARY STATEMENT . . . . . . . . . . . . . . . . . . . . .   1

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . .   1

    I.    The Defendant Voluntarily Gave
        Consent To Enter His Apartment. . . . . . . . . . . .   1

        A.    The Defendant Consented to Entry . . . . . . .   2

        B.    The Defendant's Consent Was Voluntary. . . . .   8

    II.   The Consent To Search Was Written And Executed In The
        Defendant's Apartment As Demonstrated By Sergeant
        Murphy's Reference To Writing Down The Defendant's
        Pedigree Information . . . . . . . . . . . . . . . .   9

    III.  Exigent Circumstances Based
        On Smell Of Marijuana . . . . . . . . . . . . . . . .   12

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . .   13

**TABLE OF AUTHORITIES**

Schneckloth v. Bustamonte,
412 U.S. 218 (1973) . . . . . . . . . . . . . . . . . . . . . 2

United States v. Albrektsen,
151 F.3d 951 (9th Cir. 1998) . . . . . . . . . . . . . . . . 8

United States v. Buettner-Janusch,
646 F.2d 759 (2d Cir. 1981). . . . . . . . . . . . . . . . 1-2

United States v. Calvente,
722 F.2d 1019 (2d Cir. 1983) . . . . . . . . . . . . . . 2, 5

United States v. Camilo,
287 F. Supp. 2d 446 (S.D.N.Y. 2003). . . . . . . . . . . . . 2

United States v. Diaz,
No. 96-1785, 2000 U.S. App. LEXIS 6312
(2d Cir. Apr. 5, 2000). . . . . . . . . . . . . . . . . . . 9

United States v. Edmondson,
791 F.2d 1512 (11th Cir. 1986). . . . . . . . . . . . . . . 8

United States v. Garcia,
56 F.3d 418 (2d Cir. 1995). . . . . . . . . . . . . . . . 6, 9

United States v. Garcia,
997 F.2d 1272 (9th Cir. 1993). . . . . . . . . . . . . . . . 5

United States v. Griffin,
530 F.2d 739 (7th Cir. 1976) . . . . . . . . . . . . . . . . 9

United States v. McCraw,
920 F.2d 224 (4th Cir. 1990). . . . . . . . . . . . . . . . 8

United States v. Ramirez-Chilel,
289 F.3d 744 (11th Cir. 2002) . . . . . . . . . . . . . . . 7

United States v. Rosi,
27 F.3d 409 (9th Cir. 1994). . . . . . . . . . . . . . . . . 5

United States v. Shaibu,
920 F.2d 1423 (10th Cir. 1989) . . . . . . . . . . . . . 5-6

United States v. Snype,
441 F.3d 119 (2d Cir. 2006) . . . . . . . . . . . . . . . . 7

United States v. Waupekenay,
973 F.2d 1533 (10th Cir. 1992). . . . . . . . . . . . . . . . . . 8